Michael Garth Moore (023742)
6336 North Oracle Road Suite 326
No. 119
Tucson, Arizona 85704
Telephone: 520-437-9440
mike@mgmoorelaw.com

*Trial Counsel for Plaintiffs*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| Paul Kitaj<br>9137 East Lippia Street<br>Tucson, Arizona 85747<br><br>and<br><br>Valorie Kitaj<br>9137 East Lippia Street<br>Tucson, Arizona 85747,<br><br>              Plaintiffs,<br><br>vs.<br><br>Tammy Van Handel<br>Arizona Department of Child Safety<br>Safety Specialist<br>2750 South Fourth Avenue<br>Tucson, Arizona 85713<br><br> and<br><br>First Name Unknown Rondeau<br>Arizona Department of Child Safety<br>Safety Specialist<br>2750 South Fourth Avenue<br>Tucson, Arizona 85713 | **Case No. 4:22-cv-00463-JCH**<br><br>**FIRST AMENDED COMPLAINT AND JURY DEMAND** |

and

Kimberly Body
Arizona Department of Child Safety
Investigations Program Supervisor
2740 South Fourth Avenue
Tucson, Arizona 85713,

      Defendants.

and

Kimberly Hartwell
Arizona Department of Child Safety
Safety Specialist
2750 South Fourth Avenue
Tucson, Arizona 85713,


and

Katelyn Galvin
Arizona Department of Child Safety
Investigations Program Supervisor
2740 South Fourth Avenue
Tucson, Arizona 85713,

      New Parties-Defendants.

For their complaint against Defendants, Plaintiffs allege as follows:

## I.    PARTIES AND JURISDICTION

1. At all times pertinent hereto, Defendants Tammy Van Handel and FNU [First Name Unknown] Rondeau were Safety Specialist investigators employed by Arizona Department of Child Safety [hereafter, "AZDCS"]. At all times pertinent hereto Kimberly Hartwell was a Safety Specialist also employed by AZDCS, and was acting as an On-Going Case Manager. They are sued in their individual capacities. The actions

2

alleged herein were done with malice, oppression and reckless disregard of the protections afforded the Plaintiffs under the Constitution of the United States;

2. At all times pertinent hereto, Defendants Kimberly Body and Katelyn Galvin were Supervisors employed by AZDCS, who engaged in and ratified the actions of Van Handel and Hartwell. They are sued in their individual capacities. The actions alleged herein were taken by Body and Galvin in their capacities with AZDCS, and were done with malice, oppression and reckless disregard of the protections afforded the Kitaj family under the Constitution of the United States;

3. At all times pertinent hereto, Plaintiffs were husband and wife, residing in this judicial district;

4. This case is brought to vindicate rights of the Plaintiffs secured by the First, Fourth, Fifth and Fourteenth Amendments to the Constitution of the United States through 42 U.S.C. §1983;

5. This Court has jurisdiction of this case pursuant to federal question jurisdiction, 28 U.S.C. §1331;

6. Venue is proper in this Court pursuant to 28 U.S.C. §1391;

## II. FACTS

### THE FIRST REMOVAL

7. Plaintiffs reallege Paragraphs 1 through 6 as if fully set forth herein;

8. On October 1, 2020, Plaintiffs' son, Matthew Kitaj, and his partner, Amanda Hall-Neighbors, were residing in Plaintiffs' home. Also in the home was R.K., the one (1)

year old, natural son of Matthew and Amanda. The three had been residing in Plaintiffs' home since Amanda learned she was pregnant. At the time, very early in her pregnancy, Amanda was an active drug user. When Amanda informed Plaintiffs, they took immediate action to have Amanda entered into a drug rehab program and secured other services for her. They oversaw her medical care. Once R.K. born, and was released from the hospital, Plaintiffs cared for R.K. and for Amanda. Plaintiffs formed a strong bond with the child, and R.K. with them;

9.  On or about September 22, 2019, a DCS investigator, Yaya Perez, visited Plaintiffs' home. Perez viewed the home, interviewed Amanda and Matthew and spoke with Paul Kitaj. She made no recommendations of any specific programs or services necessary for the department to approve the placement. She was made aware that Valorie Kitaj was an experienced registered nurse. Perez approved the placement;

10. At just past midnight on October 1, 2020, Plaintiffs awoke to hearing raised voices in the room occupied by the other three occupants, and responded. Such a disturbance was the first of its kind since R.K. had been living with them. Paul Kitaj called 911 because Matthew was threatening suicide;

11. Deputies of the Pima County Sheriff Department were dispatched, entered the home, escorted Matthew out, and ultimately arrested him on misdemeanor assault charges. Amanda suffered no injuries, but had several very small marks on her neck. She denied that Matthew had attempted to choke her, and denied that she state she had lost consciousness or had verged on losing consciousness;

12. The deputies did not report finding any illegal drugs or alcohol in the home, nor report any danger to R.K.. The deputies' report pictured Plaintiffs as reasonable, concerned grandparents;

13. On information and belief, at some point following the events, someone called the AZDCS "Hotline" and made some sort of report;

14. On the morning of October 2nd, Defendant Body received the narrative and assigned Defendants Van Handel and Rondeau to investigate. They conducted a review of the department records, finding only a single involvement with the department in the past, that being the home visit by DCSS Yaya Perez on September 22, 2019, who had approved the home and Plaintiffs as caregivers for R.K. Defendants also obtained the information from PCSD as to the events of the night of October 1st;

15. The two Defendants went to the Plaintiffs' home, no one was home, and Van Handel left her card, but no other information. Van Handel did not request that anyone contact her;

16. On October 5, 2020, at approximately 10:00 a.m., the two Defendants arrived for a second time at the home. Plaintiffs responded to the door. So did R.K.'s mother, Amanda. All were cooperative, answering Defendant's questions for approximately forty (40) minutes. Defendants were also informed that Plaintiffs were in process of securing residential treatment for their son. Van Handel then demanded entry into the home, stating that the deputies had reported that the home was "cluttered" and she had concern for the baby's welfare. Plaintiffs declined to allow Defendants into the home, but brought R.K. to

the door. Valorie Kitaj informed Defendants that she did not know them, and that the family had a constitutional right to privacy. R.K. was healthy, happy and a well-adjusted infant, and this was obvious to the Defendants. Defendants, from their vantage point, could see into the house, and its condition. Defendants had no reasonable suspicion that R.K. had been abused nor neglected.

17. Van Handel's attitude became hostile to Plaintiffs and appeared angry that she had been denied entry and that Mrs. Kitaj had raised her concern about constitutional privacy rights. Van Handel, at the conclusion, told Amanda and Plaintiffs that if they did not allow her into the house, she would be back later and that they would have to let her in. Plaintiffs took this as a threat. Defendants left the home;

18. Van Handel then communicated with Defendant Body and these Defendants together decided to secure a Court Authorized Removal Order [hereafter, a "CAR"] for the child. Van Handel provided the information, and Body prepared and executed a sworn application for the CAR around 4:40 p.m. The application contained material misrepresentations and omitted exculpatory evidence. Primary among the misrepresentations was the allegation that Plaintiffs had refused to allow Defendants to see R.K., and that Mrs. Kitaj had been "aggressive" with Van Handel. In the absence of such misrepresentations and without the omitted exculpatory facts, no CAR could have issued, because there was no probable cause that R.K. had been abused, neglected, or was in danger of abuse or neglect;

19. The CAR was signed by a magistrate, and Van Handel contacted Pima County Sheriff's Department to accompany her back to the home to seize R.K.;

20. At approximately 6:30 p.m., after falsely informing PCSD that Plaintiffs would not let her see the child, that the Plaintiffs were "not cooperating," and that the grandmother, Valorie Kitaj, was being "aggressive," all consistent with misrepresentations in the application, Van Handel returned to the home in the company of two PCSD deputies;

21. Defendant had prepared a "Temporary Custody Notice" which justified the seizure on false grounds, served that on Amanda, and took R.K.;

22. On October 8, 2020, Defendant Body sent a letter to Plaintiffs, acknowledging that Plaintiffs were seeking placement, but denying that request. In denying placement, Body repeated misrepresentations concerning Plaintiffs as the grounds for denial. She specifically described "concerns" with Plaintiffs "impeding the investigation and not allowing access to your home." She described another ground as Plaintiffs not being "aligned" with the department;

23. On information and belief, a dependency action was commenced by Van Handel and Body. Plaintiffs were not named, nor invited to appear as parties in that action. They were denied visitation with R.K. by the department, based entirely on misrepresentations and omissions of exculpatory facts by the named Defendants, and Plaintiffs' relationship with the child cut off;

**THE SECOND REMOVAL**

24. On or about January 25, 2021, the dependency petition was dismissed;

25. Following that dismissal, Amanda sought permission to return to the Kitaj's home with R.K. Plaintiffs agreed to that, with the understanding that AZDCS and the juvenile court were no longer involved in the child's life;

26. The mother and child thereafter resided with Plaintiffs, and all were doing well;

27. Following the first seizure, Valorie Kitaj had appeared on a podcast and had criticized the actions of the AZDCS staff in the original seizure. This appearance came to the notice of the Defendants and constituted additional motivation for them to act against the Plaintiffs

28. Prior to February 25, 2021, Defendants Hartwell, Van Handel and her supervisor, Galvin conferred and began to document, falsely, that Plaintiffs were mentally unstable and dangerous to the child. Hartwell, who had been in communication with Amanda's grandmother, with whom the child had resided after removal from the Kitaj's home in October, 2020, until the mother and child returned following closure of the case, upon learning that Amanda had returned to Tucson, began pressuring the grandmother to call the AZDCS Hotline to report alleged abuse and neglect of the child. She falsely reported that the Kitaj's were mentally unstable and a danger to the child. The grandmother resisted these demands, but, on February 24, 2021, placed a call to the Hotline as the Defendants had pressured;

29. During the call, the grandmother, who first indicated the mental instability of the Kitaj's, repudiated that statement to the Hotline call taker, and informed him she had

no grounds to report abuse or neglect. The Hotline call taker directed the grandmother to call local law enforcement and request a welfare check. The grandmother, on hanging up, decided not to place that call, and so informed Hartwell that she would not agree to the demand;

30. Unable to secure a report in order to commence another proceeding and remove the child again, Defendants fabricated reasons to seize the child a second time;

31. At about 8:00 a.m. o'clock on February 25, 2021, Defendant Van Handel appeared at Plaintiffs' door, accompanied by three uniformed, armed Pima County

32. One deputy and Van Handel informed Plaintiffs that Van Handel was there to remove the child. When asked to produce a warrant, the deputies and Van Handel walked to the sidewalk, and spent about twenty (20) minutes outside the hearing of Plaintiffs;

33. When the four returned, Van Handel informed Plaintiffs that she had a court order for the seizure of R.K. Plaintiffs understood her justification was that the home environment not reasonably safe to protect the child from the risk of injury or illness. Van Handel had falsified information based on communications with Hartwell, and Galvin knowingly collaborated in the writing of the application;

34. Van Handel entered the home, and she and the deputies walked through, and into, all the rooms. The home environment was obviously safe. Van Handel eventually spoke with Amanda outside the home, then took custody of the child and left, as did the Deputies;

35. A second dependency petition was filed, naming the mother as party. Plaintiffs were not named, and had no access to the Defendants' filings or other filings in the case;

36. Unknown to Plaintiffs, Defendants commenced the process in the department of substantiating charges of neglect against only Valorie Kitaj. They falsified in their documentation the claim that Mrs. Kitaj violated Arizona law in allowing the child to reside in the home which put R.K. at unreasonable risk of harm from injury or illness;

37. The actions taken above constituted retaliation by Defendants against the Plaintiffs because they had engaged in expression of concern regarding the department's actions in the first and second seizure;

38. Additionally, Defendants continued to document allegations that the Plaintiffs were mentally ill and unstable, which they knew to be completely false. This documentation was subsequently provided to the AAG prosecuting the case, and used by the AAG to oppose the Plaintiffs' later-filed motion to intervene in the dependency case;

39. Defendants thereafter reported to parties outside the department, and not part of the dependency case these allegations of mental instability and mental illness, warning the parties against contact or communication with Plaintiffs;

40. Defendants' actions were intended to punish Plaintiffs for having engaged in protected expression and to sever the close and intimate relationship the Plaintiffs had developed with R.K.;

41. Between May, 2021, and July, 2021, Defendants pursued the substantiation of the false charge of neglect, and the department thereafter listed Valorie Kitaj on the "central registry" of offenders;

### III. FIRST CLAIM: FIRST AND FOURTEENTH AMENDMENT VIOLATION: FAMILIAL ASSOCIATION

42. Plaintiffs reallege the preceding Paragraphs as if fully set forth herein;

43. This Claim is brought against all Defendants under the provisions of the Constitution of the United States guaranteeing the right of familial association;

44. The actions taken by Defendants, as alleged herein, were done intentionally to obstruct and sever the familial association of Plaintiffs and R.K., without probable cause;

45. As a direct and proximate result, Plaintiffs have suffered intangible damages, incurred expense and attorney fees, and will continue to suffer such injuries and losses in the future;

### IV. SECOND CLAIM: CLAIM AGAINST VAN HANDEL AND BODY: FIRST REMOVAL JUDICIAL DECEPTION

46. Plaintiffs reallege the preceding Paragraphs as if fully set forth herein;

47. This Claim is brought against these two Defendants under the provisions of the Constitution of the United States guaranteeing the right of due process;

48. The actions taken by Defendants, as alleged herein, were done intentionally to obstruct and sever the familial association of Plaintiffs and R.K., without probable cause. The removal of R.K. from the home was accomplished by judicial deception. Defendants

further falsified department records in order to continue the separation of Plaintiffs from R.K.;

49. As a direct and proximate result, Plaintiffs have suffered intangible damages, incurred expense and attorney fees, and will continue to suffer such injuries and losses in the future;

### V. THIRD CLAIM: CLAIM AGAINST VAN HANDEL AND BODY: FIRST REMOVAL FIRST AMENDMENT RETALIATION

50. Plaintiffs reallege the preceding Paragraphs as if fully set forth herein;

51. This Claim is brought against these two Defendants under the provisions of the Constitution of the United States guaranteeing the right of free expression;

52. The actions taken by Defendants, as alleged herein, were done intentionally to obstruct and sever the familial association of Plaintiffs and R.K., without probable cause. Defendants, further, falsified department records in order to continue the separation of Plaintiffs from R.K. All these actions were taken because Plaintiffs had objected on constitutional grounds to demands made by Van Handel and were intended to punish Plaintiffs and chill Plaintiffs' First amendment expression;

53. As a direct and proximate result, Plaintiffs have suffered intangible damages, incurred expense and attorney fees, and will continue to suffer such injuries and losses in the future;

### VI. FOURTH CLAIM: FIRST AND FOURTEENTH AMENDMENT VIOLATION: SECOND REMOVAL FAMILIAL ASSOCIATION: VAN HANDEL, HARTWELL AND GALVIN

54. Plaintiffs reallege the preceding Paragraphs as if fully set forth herein.

55. This Claim is brought against Defendants under the provisions of the Constitution of the United States guaranteeing the right of familial association;

56. The actions taken by Defendants, as alleged herein, were done intentionally to obstruct and sever the familial association of Plaintiffs and R.K., without probable cause;

57. As a direct and proximate result, Plaintiffs have suffered intangible damages, incurred expense and attorney fees, and will continue to suffer such injuries and losses in the future;

### VII. FIFTH CLAIM: CLAIM AGAINST VAN HANDEL, HARTWELL AND GALVIN: SECOND REMOVAL JUDICIAL DECEPTION

58. Plaintiffs reallege the preceding Paragraphs as if fully set forth herein;

59. This Claim is brought against these two Defendants under the provisions of the Constitution of the United States guaranteeing the right of due process;

60. Upon information and belief, Plaintiffs assert that Defendants did secure a CAR on February 25, 2021. Plaintiffs further assert that both Defendants collaborated in the sworn application which caused the CAR to be approved. Plaintiffs further assert that the allegations supporting the application were false and fabricated, and that had the Defendants presented the true facts, no CAR would have issued. The actions taken by Defendants, as alleged herein, were done intentionally to obstruct and sever the familial association of Plaintiffs and R.K., without probable cause. The removal of R.K. from the home was accomplished by judicial deception. Defendants further falsified department records in order to continue the separation of Plaintiffs from R.K.;

61. As a direct and proximate result, Plaintiffs have suffered intangible damages, incurred expense and attorney fees, and will continue to suffer such injuries and losses in the future;

## VIII. SIXTH CLAIM: CLAIM AGAINST VAN HANDEL, HARTWELL AND GALVIN: FIRST AMENDMENT RETALIATION

62. Plaintiffs reallege the preceding Paragraphs as if fully set forth herein;

63. This Claim is brought against these three Defendants under the provisions of the Constitution of the United States guaranteeing the right of free expression;

64. The actions taken by Defendants, as alleged in ¶¶27 through 41, were done intentionally to obstruct and sever the familial association of Plaintiffs and R.K., without probable cause. All these actions were taken because Plaintiffs had objected on constitutional grounds to demands made by Van Handel, criticized the actions of the department both to agents of the department and outside the agency, and the responsive actions alleged were intended to punish Plaintiffs and chill Plaintiffs' First amendment expression;

65. As a direct and proximate result, Plaintiffs have suffered intangible damages, incurred expense and attorney fees, and will continue to suffer such injuries and losses in the future;

WHEREFORE, Plaintiffs demand judgment against these Defendants, jointly and severally, as set forth below:

1. Under all Claims, an award of compensatory damages to each Plaintiff in such amounts as the jury deems just;

2. Under all Claims, an award of punitive damages to each Plaintiff in such amounts as the jury deems just;

3. An award of reasonable attorney fees and costs, pursuant to 42 U.S.C. §1988;

4. An award of pre-judgment and post-judgment interest;

5. Such other relief as this Court deems just.

Respectfully submitted,

/s/ Michael Garth Moore
Michael Garth Moore (023742)
6336 N. Oracle Road Ste. 326  No. 119
Tucson, Arizona 85704
Telephone: 520-437-9440
mike@mgmoorelaw.com

*Trial Counsel for Plaintiffs*

# CERTIFICATE OF SERVICE

I certify that a true and accurate copy of the foregoing was filed through the Court's electronic filing system on February 7, 2023. Notice of this filing will be sent to all parties and counsel through the Court's filing system. Parties and counsel may access the filing through the Court's system. Summons and Complaint will be served upon the New-Party Defendants per Rule.

/s/ Michael Garth Moore
Michael Garth Moore (023742)
6336 N. Oracle Road Ste. 326  No. 119
Tucson, Arizona 85704
Telephone: 520-437-9440
mike@mgmoorelaw.com

*Trial Counsel for Plaintiffs*