KRISTIN K. MAYES
ATTORNEY GENERAL

CLAUDIA ACOSTA COLLINGS (021647)
Assistant Attorney General
416 West Congress, 2nd Floor
Tucson, Arizona 85701-1315
(520) 638-2815 • Fax (520) 628-6050
Claudia.Collings@azag.gov

Attorneys for State Defendants

**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| Paul Kitaj and Valorie Kitaj, | No. CV22-00463-TUC-JCH |
| Plaintiffs, | **STATE DEFENDANTS' MOTION TO DISMISS** |
| v. | |
| Tammy Van Handel, First Name Unknown Rondeau, Kimberly Body, Kimberly Hartwell, and Katelyn Galvin, | |
| Defendants. | |

Defendants Tammy Van Handel, Kimberly Body, and Kimberly Hartwell ("State Defendants")[1] move for an order dismissing Plaintiffs' First Amended Complaint. Dismissal is appropriate because Plaintiffs failed to state a claim upon which relief may be granted under Federal Rules of Civil Procedure 12(b)(6). The Court should dismiss because (1) Plaintiffs do not have a cognizable right to familial association with R.K.; (2) qualified immunity protects the State Defendants from Plaintiffs Claims; (3) Plaintiffs failed to state a claim for judicial deception; (4) Plaintiffs failed to state a claim for retaliation. This motion is supported by the following Memorandum of Points and Authorities.

---

[1] The parties entered into a stipulation to dismiss Defendants Rondeau and Galvin (Doc. 23), which the Court granted on April 24, 2023 (Doc. 24). This Motion, therefore, does not address those named Defendants.

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. Background.

### A. Brief Background.

Plaintiffs Paul and Valorie Kitaj are the parents of Matthew Kitaj. (Doc. 13, ¶ 8.) Amanda Hall-Neighbors previously dated Matthew. (*Id.*) She and her son, R.K., lived with Matthew in Plaintiffs' residence. (*Id.*) R.K. has no biological relation to the Plaintiffs.

The individually named defendants are or were at the time state employees working in various capacities at the Arizona Department of Child Safety ("DCS"). Tammy Van Handel was the investigator assigned to investigate the DCS Hotline reports alleging abuse or neglect of a child. (*Id.* ¶ 1, 14.) Kimberly Body was Van Handel's supervisor. (*Id.* ¶ 2, 14.) Kimberly Hartwell was the ongoing case manager during the child's dependency. (*Id.* ¶ 1, 28.)

### B. Brief Summary of Allegations Related to DCS Defendants.

This lawsuit arises out of two state-court orders authorizing the removal of a child, then known as R.K., from his mother who was living in Plaintiffs' residence. (Doc. 13, ¶¶ 8, 16, 20.) There were two removals, one on October 5, 2020, and another on February 25, 2021. (*Id.* ¶¶ 16, 18, 31, 34.)

R.K. has no relation to the Plaintiffs. Amanda Hall-Neighbors is the natural mother of R.K. (*Id.* ¶ 8.) Her partner at the time of R.K.'s removal was Matthew Kitaj. (*Id.* ¶ 8.) Matthew Kitaj, who is Plaintiffs' son (*id.*), is **not** the natural father of R.K.

Prior to the removal, Amanda and Matthew were living in the Kitaj's residence from the time Amanda learned she was pregnant. (*Id.*) Amanda had used drugs during her pregnancy, and had previous involvement with the Department of Child Safety ("DCS"). (*Id.* ¶¶ 8-9.)

On October 1, 2020, an act of domestic violence occurred between Amanda and

2

Matthew. (*Id.* ¶ 10.)  Plaintiff Paul Kitaj called 911 because Matthew was threatening suicide. (*Id.*)  Pima County Sheriff Deputies responded and it was noted that Amanda had marks on her neck, and deputies arrested Matthew on assault charges. (*Id.* ¶ 11.) Thereafter, the DCS Hotline received a report concerning R.K.'s safety. (*Id.* ¶ 13.)

On October 2, 2020, Defendant DCS Investigator Tammy Van Handel was assigned to investigate the report. (*Id.* ¶ 14.)  Van Handel obtained information from Pima County Sheriff's Office regarding the domestic violence incident from the night before. (*Id.*)  Van Handel went to Plaintiffs' residence, found that no one was home, and left her business card. (*Id.* ¶ 15.)

On October 5, 2020, Van Handel went to Plaintiffs' residence again. (*Id.* ¶16.) Plaintiffs and Amanda answered the door to the residence. (*Id.*)  They informed Van Handel that they were securing residential drug treatment for Matthew. (*Id.*)  Van Handel sought to enter the home to check on the condition of the home based on safety concerns for the child's welfare, but Plaintiffs' denied her entry. (*Id.*)

Van Handle then discussed the prior events with her supervisor Defendant Body and they obtained a Court Authorized Removal Order ("CAR") for R.K.'s safety. (*Id.* ¶ 18.)  The CAR was signed by a magistrate judge, and Van Handle contacted the Pima County Sheriff's Department to assist with the removal of R.K. (*Id.* ¶ 19.)  Van Handle also prepared a Temporary Custody Notice, served it on Amanda, and removed R.K. from the residence. (*Id.* ¶ 21.)

A dependency action was commenced, and as Plaintiffs were not R.K.'s parents, they were not parties to the dependency action in state court. (*Id.* ¶ 23.)  On October 8, 2020, Body sent a letter to Plaintiffs denying their request for placement of R.K. (*Id.* ¶ 22.)  R.K. resided with his maternal great-grandmother, Amanda's grandmother, during the dependency. (*Id.* ¶ 28.)

During the dependency, it was determined that Matthew was not identified as

R.K.'s father on his birth certificate. (Exhibit A, redacted birth certificate.[2])  Further, DNA testing conclusively ruled out Matthew as being R.K.'s biological father. (Exhibit B.)

Sometime after R.K's removal from Amanda, Plaintiff Valorie Kitaj criticized DCS on a podcast. (Doc. 13 ¶ 27.)

On or about January 25, 2021, the dependency action was dismissed. (*Id.* ¶ 24.) Following the dismissal of the dependency action, Amanda returned with R.K. to Plaintiffs' residence. (*Id.* ¶ 25.)  On February 24, 2021, Amanda's grandmother placed a call to the DCS Hotline, concerned about R.K.'s safety. (*Id.* ¶ 28.)  The next day, Van Handel secured a CAR and removed R.K. from Amanda's care, where she was staying at Plaintiffs' residence. (*Id.*, ¶¶ 31-34.)

Thereafter, a second dependency action was initiated naming Amanda, R.K.'s mother as a party—not Plaintiffs. (*Id.* ¶ 35.)

Upon information and belief, Amanda's parental rights to R.K. have been terminated and R.K. has been adopted.[3]

## II.   Legal Standard.

Dismissal under Rule 12(b)(6) can result from "the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988).  Courts are "not bound to accept as true a legal conclusion couched as a factual allegation." *Ashcroft v.*

---

[2] A court may consider facts extraneous to a complaint on a motion to dismiss, including matters of public record, without converting the motion into one for summary judgment, if such facts are judicially noticeable under Federal Rule of Evidence 201. *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001); *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006). The Court may take judicial notice of matters of public record and facts that are "not subject to reasonable dispute" because they "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2).

[3] These judicially noticeable facts can be supported with additional documentation if the Court so requests.

4

*Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. A complaint should be read in conjunction with Federal Rule of Civil Procedure 8(a)(2), which requires a "showing" that plaintiff is entitled to relief "rather than a blanket assertion of entitlement to relief." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft,* 556 U.S. at 678. Courts may resolve claims of qualified immunity at the motion-to-dismiss stage. *Sabra v. Maricopa Cnty. Cmty. Coll. Dist.*, 44 F.4th 867, 892 (9th Cir. 2022).

**III.    Plaintiffs Have Failed to State a Deprivation of a Constitutional Right.**

    **A.    Plaintiffs Do Not Have a Cognizable Right to Familial Association.**

Under Plaintiffs' First and Fourth Claims, they allege that the State Defendants violated their right to familial association. Under Plaintiffs' Second and Fifth Claims, they allege that the State Defendants violated their right to be free from judicial deception under the Due Process clause and that such was committed to obstruct their familial association with R.K.

Plaintiffs have failed to allege a deprivation of their substantive due process right to familial association under the First and Fourteenth Amendments under their First, Second, Fourth, and Fifth Claims. To state a claim for relief under § 1983, plaintiffs must "plead that (1) defendants acting under color of state law (2) deprived plaintiffs of rights secured by the Constitution or federal statutes." *Gibson v. United States*, 781 F.2d 1334, 1338 (9th Cir. 1986.)

The Due Process Clause of the Fourteenth Amendment protects a "liberty" interest—or, a substantive due process right—that includes the right to family integrity, familial association, and the right of parents to direct the upbringing of their children. *See Troxel v. Granville*, 530 U.S. 57, 65-66 (2000). The right to familial association is a

fundamental liberty interest. *Keates v. Koile,* 883 F.3d 1228, 1236 (9th Cir. 2018). The First Amendment also protects family relationships. *Id.* To establish this substantive due process claim, a plaintiff must show that the government deprived him of his liberty interest—or right to family association. *Costanich v. Dep't of Soc. & Health Servs.*, 627 F.3d 1101, 1110, 1115 (9th Cir. 2010); *accord Capp v. Cty. of San Diego*, 940 F.3d 1046, 1060 (9th Cir. 2019).

In 2010, the Ninth Circuit in *Costanich* analyzed plaintiff's "deliberate fabrication of evidence claim" under her 14th Amendment substantive due-process rights[3] and held that "reasonable government officials are on notice that deliberately falsifying evidence in a child abuse investigation and including false evidentiary statements in a supporting declaration violates constitutional rights *where it results in the deprivation of liberty . . . interests*, be it in a criminal or civil proceeding." 627 F.3d at 1111 (emphasis added). The Ninth Circuit in *Capp* affirmed dismissal of plaintiffs' 14th Amendment claim for failing to allege a *deprivation* of their liberty interest in familial relations. 940 F.3d at 1060.

Here, Plaintiffs allege "familial association" claims under the First and Fourteenth Amendments. (Doc. 13 at 11, 12-13.) They allege under the First Claim regarding the first removal of R.K. that all Defendants acted to obstruct and sever the familial association of Plaintiffs and R.K. (Doc. 13, ¶ 44) and that Defendants Van Handel and Hartwell did the same as to the second removal under the Fourth Claim (*id.* ¶ 56).

Notably however, Plaintiffs do not allege that they are R.K.'s parents with a right to familial association. Nor can they because they are not R.K.'s parents: Amanda Hall-Neigbors is R.K.'s biological mother. (*Id.* ¶ 8.) Ms. Hall-Neighbors is not a party to this action, and her parental rights have since been severed. Plaintiffs are not even R.K.'s grandparents because their son Matthew is not R.K.'s father. (Exhibit A, B.) Even if Plaintiffs were R.K.'s grandparents, they have no protected interests sufficient to allege a deprivation of a right to familial association. *Cf. Miller v. California*, 355 F.3d 1172,

6

1175–77 (9th Cir. 2004) (noncustodial grandparents, who were de facto parents under state law, had no protected liberty interest in their relationship with their biological grandchildren); *see also Backlund v. Barnhart*, 778 F.2d 1386, 1389–90 (9th Cir. 1985) ("[F]oster parents do not enjoy the same constitutional protections that natural parents do.").

Plaintiffs also allege claims for "judicial deception" under their due process rights to familial association. (Doc. 13, Second Claim and Fifth Claim.)  To state a judicial deception claim, a plaintiff must allege "(1) a misrepresentation or omission (2) made deliberately or with a reckless disregard for the truth, that was (3) material to the judicial decision." *Benavidez v. Cnty. of San Diego*, 993 F.3d 1134, 1147 (9th Cir. 2021).  Other courts have articulated the claim as one of deliberate fabrication where "a plaintiff must prove that '(1) the defendant official deliberately fabricated evidence and (2) the deliberate fabrication caused the plaintiff's deprivation of liberty.'" *Keates*, 883 F.3d at 1240 (quoting *Spencer v. Peters*, 857 F.3d 789, 798 (9th Cir. 2017)).  Whether framed as judicial deception or deliberate fabrication, the underlying claim is based on the Fourteenth Amendment's Due Process clause when a liberty interest in familial association is at stake. *Benavidez*, 993 F.3d at 1146.

The Plaintiffs allege that State Defendants actions "were done intentionally to obstruct and sever the familial association of Plaintiffs and R.K." (Doc. 13, ¶¶ 48, 60.) They allege that R.K.'s removal from their home was accomplished by judicial deception and that they falsified records to continue their separation. (*Id.* ¶¶ 48, 60.)  They allege as to the second removal that the application for the CAR contained false and fabricated allegations and that no CAR would have issued if they had presented the true facts. (*Id.* ¶ 60.)

Notably, however, Plaintiffs do not allege that they actually lost custody of R.K. Nor could they because they did not have custody of R.K.  R.K. was removed from his

7

mother, Ms. Hall-Neighbors who happened to be staying at the home of the Plaintiffs. R.K. was not Plaintiffs' child.

Moreover, Plaintiffs' allegations are merely conclusory allegations that judicial deception was committed without any factual allegations to support intentional wrongdoing to deprive them of any rights. Rather, Plaintiffs allege that the juvenile court initiated dependency proceedings and admit that they were not parties, R.K.'s mother was. (Doc. 13, ¶¶ 25, 35.) There are no factual allegations to support what was false or fabricated in the CAR application or what true facts had been omitted. Absent something more, such conclusory statements do not "nudge[ ] [plaintiffs'] claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. And their allegations that R.K.'s removed from their home was accomplished by judicial deception are too attenuated and do not rise to the level of a constitutional violation of a liberty interest in familial relations. Because Plaintiffs have failed to allege that they were deprived of a relationship with their child or that any alleged "judicial deception" actually caused any deprivation of any established liberty interest in their relationship to their child—nor could they have because R.K. was not their child—their claims fail and the Court should dismiss Claims One, Two, Four, and Five.

**B. Qualified Immunity Protects the State Defendants from Plaintiffs' Claims.**

Qualified immunity protects government employees "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Qualified immunity is immunity from suit and, therefore, intended to ensure that "insubstantial claims" against government officials are resolved prior to discovery—"at the earliest possible stage in litigation." *Id.* at *232* (internal quotations and citations

omitted). To make a finding based on qualified immunity, the Court must determine: (1) if Plaintiff alleged a deprivation of a constitutional right at all, and (2) if that right was clearly established at the time of the violation. *Id.* at 232. "When this test is properly applied, it protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Hernandez v. City of San Jose,* 897 F.3d 1125, 1132-33 (9th Cir. 2018).

The relationship between a parent and child implicates a fundamental liberty interest. *See Lemire v. Cal. Dep't of Corrs. & Rehab.,* 726 F.3d 1062, 1075 (9th Cir. 2013) ("Parents and children may assert Fourteenth Amendment substantive due process claims if they are deprived of their liberty interest in the companionship and society of their child or parent through official conduct.") The protections under the Due Process Clause are limited to a "narrow range of liberty interests" traditionally protected as fundamental. *Mullins v. Oregon*, 57 F.3d 789, 793 (9th Cir. 1995).

Plaintiffs Paul and Valorie Kitaj claim that their First and Fourteenth Amendment rights were violated under Claims One, Two, Four, and Five when the State Defendants allegedly severed their familial association with R.K. and removed R.K. from their home with judicial deception to sever their familial association with R.K. (Doc. 13 at 11-14.)

A district court in the Ninth Circuit has held that a de facto parent or a prospective adoptive parent, does not have a clearly established a liberty interest protected by the Due Process Clause. *Olvera v. County of Sacramento*, 932 F.Supp. 2d 1123, 1143 (E.D. Cal. 2013) (analyzing and applying California law). In *Mullins*, the Ninth Circuit declared that "whatever claim a prospective adoptive parent may have to a child, we are certain that it does not rise to the level of a fundamental liberty interest." *Id*. at 794; *see also Griggs v. Arizona*, No. CV 12-02257-PHX-JAT, 2013 WL 1498947, at *4 (D. Ariz. Apr. 10, 2013) (stating that a prospective adoptive parent has "no interest in the child derived from the Due Process Clause"). Likewise, the court in *Miller v. California*, 355 F.3d 1172, 1175–77 (9th Cir. 2004) found that noncustodial grandparents, who were de facto parents under

1  state law, had no protected liberty interest in their relationship with their biological
2  grandchildren.

3  But under the facts of this case, Paul and Valorie Kitaj were neither parents nor
4  grandparents of R.K because their son Matthew was not R.K.'s father. (Exhibits A, B.)
5  Ms. Hall-Neighbors who was dating Matthew was R.K.'s mother, but her parental rights
6  have since been severed.

7  Thus, Plaintiffs do not have a constitutionally protected liberty interest in their
8  purported relationship with R.K. as they are not his parents, prospective adoptive parents,
9  de facto parents, nor grandparents.  They thus cannot establish a constitutional deprivation
10 and will be unable to provide clearly established law that they have any cognizable right
11 to be free from such alleged constitutional violations.  The DCS Defendants are thus
12 protected by qualified immunity, and the Court should dismiss this action.

13 **IV.    Plaintiffs Have Failed to State a Claim for Judicial Deception Under the Second and Fifth Claims.**
14

15 Notwithstanding the arguments set forth above regarding Plaintiffs' defective
16 claims for judicial deception, they nevertheless fail to state plausible claims for relief.
17 Social workers "have absolute immunity when they make 'discretionary, quasi-
18 prosecutorial decisions to institute court dependency proceedings to take custody away
19 from parents.'" *Beltran v. Santa Clara Cty*., 514 F.3d 906, 908 (9th Cir. 2008).  They do
20 not enjoy absolute immunity however, "if they fabricate[] evidence during an
21 investigation or [make] false statements in a dependency petition affidavit [. . .] because
22 such actions aren't similar to discretionary decisions about whether to prosecute." *Id.*  To
23 successfully allege a violation of the constitutional right to be free from judicial
24 deception, a plaintiff must state a claim that includes "(1) a misrepresentation or omission
25 (2) made deliberately or with a reckless disregard for the truth, that was (3) material to the
26 judicial decision." *Benavidez*, 993 F.3d at 1147.  Such claims for judicial deception

should be pled with particularity because of the alleged fraud perpetrated upon the court.

Under Rule 9(b), a plaintiff "must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). This means the plaintiff must allege "the who, what, when, where, and how of the misconduct charged," *Ebeid ex rel. United States v. Lungwitz*, 616 F.3d 993, 998 (9th Cir. 2010) (quoting *Vess v. Ciba–Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003)), including what is false or misleading about a statement, and why it is false, *see id.* Knowledge, however, may be pled generally. *United States v. Corinthian Colls.*, 655 F.3d 984, 996 (9th Cir. 2011). Mere conclusory allegations of fraud are insufficient. *United States v. United Healthcare Ins. Co.*, 848 F.3d 1161, 1180 (9th Cir. 2016).

Under the judicial-deception claims, Plaintiffs merely allege in a conclusory fashion that the State Defendants accomplished R.K.'s removal from their home with judicial deception. (Doc. 13 at 11, 13.) They claim that the Defendants falsified documents, fabricated reasons, and that the CAR applications contained material misrepresentations and omitted exculpatory evidence. (*Id.* ¶¶ 18, 28, 3048, 60.) They fail to allege the particularity of the fraud regarding the who, what, when, where and how. They fail to explain what the material representations were and especially how any of this information was related to the court's decision to allow R.K. to be removed from his mother's care. They fail to allege with particularity what documents or DCS records had been falsified to continue their so-called separation from R.K.

For these reasons, Plaintiffs have failed to state a plausible claim relief, and therefore Claim Two and Five should be dismissed.

**V.    Plaintiffs Failed to State a Retaliation Claim.**

Plaintiffs allege under their Third and Sixth Claims that the Defendants retaliated against them in violation of their First Amendment right of free expression.

To state a First Amendment retaliation claim, a plaintiff must plausibly allege that (1) he or she was engaged in a constitutionally protected activity, (2) the defendants' actions would chill a person of ordinary firmness from continuing to engage in the protected activity, and (3) the protected activity was a substantial or motivating factor in defendants' conduct. *Capp*, 940 F.3d 1046, 1053. "Specifically, a plaintiff must show that the defendant's retaliatory animus was 'a 'but-for' cause, meaning that the adverse action against the plaintiff would not have been taken absent the retaliatory motive.'" *Id.* (internal quotation and citation omitted).

Plaintiffs allege, as to the first removal, that the State Defendants severed their familial association with R.K. and they falsified records because they had "objected on constitutional grounds to demands made by Van Handel and were intended to punish [them] and chill [their] First Amendment expression. (Doc. 13, ¶ 52.) As to the second removal, they allege essentially the same thing. (*Id.* ¶ 64.) However, it is unclear who the Plaintiffs expressed these objections to and when. There are no factual allegations to support that making these objections would chill other non-relatives from engaging in the same kind of speech. Assuming without conceding that Plaintiffs plausibly alleged that they engaged in constitutionally protected speech, they did not plausibly allege that the Defendants' conduct in proceeding with their investigation of child welfare vis-à-vis R.K. and his mother—not of unrelated individuals such as the Plaintiffs—was substantially motivated by Plaintiffs' allegedly protected speech. That is, there are no allegations to support that R.K.'s removal from Amanda, who was living in Plaintiffs' home would not have been taken absent the retaliatory motive allegedly against the Plaintiffs. Thus, the allegations are not sufficient to support the Plaintiffs conclusion that defendants' actions were substantially motivated protected activity. *Mt. Healthy City School Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977). And Plaintiffs fail to provide any factual allegations to support any retaliatory conduct whatsoever regarding how or why the

conduct was retaliatory or motivated by retaliatory animus sufficient to plausibly state a claim for relief. And in this case, where Plaintiffs have no right to familial association with R.K. and could not have been deprived of any such right, they fail to establish a causal connection between their non-injury and Defendants' retaliatory animus. *Nieves v. Bartlett*, 139 S. Ct. 1715, 1722 (2019) and Plaintiffs' claims consist of threadbare recitals of the retaliation elements that are merely supported by conclusory statements. Because Plaintiffs have failed to plausibly state a claim for relief, the Court should dismiss these claims.

Alternatively the State Defendants are protected by qualified immunity. Qualified immunity protects government employees "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (*citing Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). No reasonable case worker would expect that by proceeding with an investigation and subsequent removal of a child that they would be at risk of violate any clearly established constitutional right as to non-parents. They are thus entitled to qualified immunity.

**VI.  Certification.**

Pursuant to Local Rule 12.1, undersigned counsel certifies that on Wednesday, April 12, 2023, undersigned counsel notified Plaintiffs' counsel by email of State Defendants' intent to file a motion to dismiss and requested a conference. Counsel met and conferred on Monday, April 17, 2023. The parties agreed to file a stipulated dismissal of Defendants Rondeau and Galvin, which was filed on April 18, 2023. The parties, however, were unable to agree that the complaint was curable by permissible amendment as to the other reasons for dismissal as argued above.

**VII. Conclusion.**

For all of the reasons argued above, the DCS Defendants respectfully request that the Court grant their Motion to Dismiss. State Defendants also request attorney's fees pursuant to 42 U.S.C 1988(b).

RESPECTFULLY SUBMITTED this __24th__ day of April, 2023.

**KRISTIN K. MAYES**
**ATTORNEY GENERAL**

./s/ Claudia Acosta Collings
CLAUDIA ACOSTA COLLINGS
Assistant Attorney General
Attorneys for State Defendants

CERTIFICATE OF SERVICE

I hereby certify that on 24th day of April, 2023, I caused the foregoing document to be electronically transmitted to the Clerk's Office using the CM/ECF System for Filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Michael Garth Moore
mike@mgmoorelaw.com
*Attorney for Plaintiffs*

s/ cac
10983542