CLAUDIA ACOSTA COLLINGS (021647)
Assistant Attorney General
416 West Congress, 2nd Floor
Tucson, Arizona 85701-1315
(520) 638-2815 • Fax (520) 628-6050
Claudia.Collings@azag.gov

Attorneys for State Defendants

**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| Paul Kitaj and Valorie Kitaj, | No. CV22-00463-TUC-JCH |
| Plaintiffs, | **DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION FOR LEAVE TO FILE THIRD AMENDED COMPLAINT** |
| v. | |
| Tammy Van Handel and Kimberly Hartwell, | |
| Defendants. | |

Defendants Van Handel and Hartwell oppose Plaintiffs' request to file a Third Amended Complaint (Doc. 118). The Plaintiffs ostensibly seek leave to amend—not to add new claims—but to add new factual allegations that post-date the accrual date of their original claims. Not only are Plaintiffs seeking to "add additional allegations" that should be time-barred under § 1983, they disguise their request for reconsideration of the Court's previous Order on the Defendants' Motion to Dismiss as a request to amend their pleading. The Court should deny Plaintiffs' motion to file a Third Amended Complaint.

**I.    Factual and Procedural Background.**

Two state-court orders authorized R.K.'s removal from his mother Amanda Hall-Neighbors' custody who was living in Plaintiffs' residence along with Plaintiffs' adult son, Matthew Kitaj. (Doc. 47, ¶¶ 9, 29, 31, 69-71, 75-77.) Plaintiffs litigated in state trial and appellate courts their desire to have placement of R.K. during his dependency proceedings. They were unsuccessful in those actions, and then brought this action in

federal court alleging familial-association, judicial-deception, and retaliation claims. (Doc. 1.) They filed their original Complaint on October 5, 2022, over two years ago. (Doc. 1.) Four months later, they filed a First Amended Complaint as a matter of course. (Doc. 13.) They added three more claims alleging violations of their rights to familial association, to be free from judicial deception, and retaliation in regards to R.K.'s second removal that had occurred on February 25, 2021, almost two years before the filing date. (Doc. 13.) The Court granted in part and denied in part Defendants' Motion to Dismiss, dismissed the case without prejudice, and allowed Plaintiffs to file a Second Amended Complaint. (Doc. 44.)

On October 23, 2023, Plaintiffs filed their Second Amended Complaint, reasserting their familial association, judicial deception, and retaliation claims as to both of R.K.'s removals. (Doc. 47.) State Defendants again filed a Motion to Dismiss. (Doc. 59.)

On September 30, 2024, the Court dismissed Plaintiffs' Claims I and III, alleging familial association and judicial deception claims as to both removals, with prejudice, finding that they lack standing because they do not have a cognizable liberty interest in their relationship with R.K. (Doc. 73.) The Court dismissed Plaintiffs' Claim II, alleging retaliation as to the first removal, with prejudice in part and without prejudice in part. (*Id.*) The Court allowed Plaintiffs Claim IV, alleging retaliation as to R.K.'s second removal to go forward. (*Id.*) It found that Plaintiffs plausibly stated a claim of retaliation that by filing an ombudsman complaint, criticizing DCS on a podcast, and denying a warrantless entry into their home, the Defendants retaliated against them by submitting false information to a judge to enter their home, entered and searched their home, and substantiated charges of neglect. (*Id.*) Other allegations fell short. (*Id.*)

The Defendants filed their Answer to the Second Amended Complaint on September 17, 2024. (Doc. 74.) Plaintiffs filed their motion for leave to amend almost four years after the second removal. (Doc. 118.) This opposition now follows.

2

## II. Standard under Rule 15.

Under Rule 15, Federal Rules of Civil Procedure, a party can amend his complaint by leave of court or written consent of the adverse party "when justice so requires." Fed. R. Civ. P. 15(a)(2). The factors commonly considered to determine the propriety of a motion for leave to amend are: (1) bad faith, (2) undue delay, (3) prejudice to the opposing party, (4) futility of amendment, and (5) whether plaintiff has previously amended his complaint. *Allen v. City of Beverly Hills*, 911 F.2d 367, 373 (9th Cir. 1990). "The district court's discretion to deny leave to amend is particularly broad where plaintiff has previously amended the complaint." *Id.* (citation omitted). Whenever a proposed amendment is offered in bad faith, would cause undue delay, or would prejudice the opposing party, a court should hesitate to allow it. *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 712 (9th Cir. 2001). A futile amendment should never be allowed. *Gardner v. Martino*, 563 F.3d 981, 990 (9th Cir. 2009). "Futility" means that the complaint, as amended, would fail to state a claim upon which relief could be granted, that is, no set of facts can be proved under the amendment that would constitute a valid and sufficient claim. *Barahona v. Union Pacific Railroad Co.*, 881 F.3d 1122, 1134 (9th Cir. 2018). Adding allegations relevant only to a precluded cause of action is futile. *See Cronk v. City of W. Richland*, 4:14-CV-5041, 2015 WL 13333495, at *4 (E.D. Wash. May 12, 2015). And the purpose for amendment is not to "include more redundant and unnecessary facts" to already established causes of action. *See Powell v. Wells Fargo Home Mortgage*, 14-CV-04248, 2016 WL 1718189, at *23 (N.D. Cal. Apr. 29, 2016).

## III. The Court Should Deny Plaintiffs' Motion to Amend.

In their motion to amend, Plaintiffs seek to "augment and clarify allegations" in the Second Amended Complaint. (Doc. 118 at 2.) They claim to add allegations to support that the Defendants made false statements that they were "mentally unstable and dangerous" and other protected activities, retaliatory actions, and injuries after the second

removal in February 2021. (*Id.* at 5-11, 7-10.)  This Court should deny Plaintiffs' motion to amend the complaint because (1) amending the complaint would be futile; (2) they have failed to explain why justice requires that they be allowed to add unnecessary detail about their alleged retaliation claim that has already passed the muster sufficient to state a claim after three iterations; (3) Plaintiffs have avoided disclosing relevant communications in their possession and the new allegations would cause Defendants to incur additional expense by reopening Plaintiff Paul Kitaj's deposition; and (4) they have failed to explain why justice requires that they be allowed to file a motion for reconsideration of this Court's order disguised as a motion to amend.

Here, Plaintiffs' motion seems to have been filed in bad faith.  "Bad faith" means acting with intent to deceive, harass, mislead, delay, or disrupt." *Wizards of the Coast LLC v. Cryptozoic Entertainment LLC*, 309 F.R.D. 645, 651 (W.D. Wash. 2015). Plaintiffs claim that they have only "scratch[ed] the surface of discovery," materials have been withheld, they are shooting at a target blindfolded, and Defendants are stonewalling. (Doc. 118 at 2-5.)  Not only is this inaccurate, they wholly fail to explain that they were in possession of their own communications with Defendant Hartwell, Jo Ann Hall, or the Ombudsman's Office as early as November 2020 to support their so-called augmented facts. (*See, e.g.,* Exhibit 1 [texts between Valorie Kitaj and Jo Ann Hall dated November 5, 2020; Exhibit 2 [letter dated November 9, 2020 to Valorie Kitaj from Hartwell]; Doc. 118-3 at 2 [letter received by Valorie Kitaj in May 2021 regarding neglect allegation and right to appeal the finding]; Doc. 118-6 at 5-8 [emails received by Valorie Kitaj in March 2021].)

Plaintiffs' proposed amended complaint does not add new claims for relief. (Doc. 118 at 2, 4, 6, 7 [stating that the amended complaint augments the factual allegations]; Doc. 118-7.)  Rather, they add conclusory and misleading statements. (*See, e.g.,* Doc. 118-2 at ¶¶ 42-43, 50, 54, 58, 59, 60, 62-65, 70, 73, 86, 95.)  For instance, Plaintiffs assert

that "in January 2021," Defendants falsely "inform[ed] Ms. Hall that Plaintiffs were barred from contact with the mother and child except by visitation at DCS facilities supervised by DCS personnel." (Doc. 118 at 6, citing TAC ¶ 42.) However, on November 5, 2020, when Valorie Kitaj asked Mrs. Hall if she could go over to her house, Mrs. Hall told her to contact Hartwell. (Exhibit 1.) Subsequent emails between Mrs. Hall and Hartwell corroborate that Mrs. Hall told Valorie Kitaj to contact Hartwell, that she didn't think Valorie was allowed to go over and she didn't trust her, and that she thought Valorie was on supervised visitation. (Exhibit 2 at 1-2.) Hartwell told her that she would call Valorie to let her know what needs to happen. (*Id.* at 2.) And a few days later, Hartwell tried to talk to Valorie in person, but Valorie refused, and she sent her a letter instead. (*Id.* at 3.) She asked Valorie to contact her to discuss visitations with the child. (*Id.*) Ms. Hall's deposition testimony further supports that it was her understanding that the Plaintiffs' were on supervised visitation and did not recall Hartwell explaining why Valorie should not have contact with the child. (Exhibit 3 [1/15/2025 Tr. of Jo Ann Hall at 27-29].) In addition, the communications recently disclosed by Paul Kitaj a few days before his deposition on January 17, 2025, reveal that in August 2021, he asked Jo Ann Hall for copies of communications between her and Hartwell in Plaintiffs' pursuit of their lawsuit. (Doc. 118-2, ¶ 49.) Nothing supports the conclusory and misleading allegations that Plaintiffs were not on supervised visitation, that Mrs. Hall wrongly barred visitation, or that Defendants knew and intended that Mrs. Hall relay any communications to the Plaintiffs in order to chill their expression. (Doc. 118-2, ¶¶ 42-43.)

In Plaintiffs' Motion, they "do not concede" that their allegations were deficient in their Second Amended Complaint. (Doc. 118 at 4.) They disagree with the Court's "concern" that they needed to show that the Defendants "intended" for Plaintiffs' to find out about and be chilled by Defendants' claims that they were "mentally unstable and dangerous." (*Id.* at 5-7, citing Doc. 73 at 15.) This, coupled with Plaintiffs' statement

5

that they specifically alleged that the Defendants intended their lies be communicated to the them by Mrs. Hall to intimidate them, reads more like a motion for reconsideration. The time for Plaintiffs to object to the Court's Order on Defendants' Motion to Dismiss the Second Amended Complaint, dated September 3, 2024, has long passed. Plaintiffs' tactics, allegations, and arguments do not evince good faith. Their motion to amend is improper and should be denied.

In evaluating undue delay, the Court determines "whether the moving party knew or should have known the facts and theories raised by the amendment in the original pleading." *AmerisourceBergen Corp. v. Dialysist W., Inc.*, 465 F.3d 946, 953 (9th Cir. 2006) (citation omitted). In their motion to amend, Plaintiffs claim that their augmented allegations became available through limited discovery. (Doc. 118 at 7, 8.) But the bulk of Plaintiffs' new factual allegations are based on what they, themselves, knew or should have known in 2022 when they originally filed their complaint, or in 2023 when they filed their amended complaints. As explained above, the new allegations about the "falsehoods" Hartwell told Mrs. Hall about the Plaintiffs were known to the Plaintiffs no later than August 2021—over a year before they filed their original complaint. (Doc. 118-2, ¶ 49; Doc. 1.) They make new allegations about the Temporary Custody Notice that was given to Amanda, which she showed the Plaintiffs at the time of the second removal on February 25, 2021. (Doc. 118-2, ¶¶ 62-68.) These allegations would have been known to the Plaintiffs almost two years before they filed their First Amended Complaint. (Doc. 13.) They make new allegations about false claims in response to Plaintiffs' complaints to the Ombudsman's Office in March 2021. (Doc. 118-2 at ¶¶ 81-86.) But again, as Plaintiffs' own disclosures show, they were party to those communications and received responsive emails in March 2021—more than two years before they filed their Second Amended Complaint. (Doc. 118-6 at 5-8.) Plaintiffs newly allege that when they learned about Hartwell's allegations in August 2021, they feared damage to their professional

6

standing and Paul Kitaj's employment in the national security defense industry. (Doc. 118-2 at ¶¶ 49, 86; *id.* at ¶ 95.) They knew or should have known of these alleged damages in 2021—more than two years before filing their Second Amended Complaint.

More importantly, Plaintiffs do not show that their new allegations are based on any new information which they did not have at the time of filing their original, First Amended, or Second Amended Complaints in 2022 or 2023. The allegations that they suffered humiliation, emotional distress, or loss of self-esteem that they add to the proposed Third Amended Complaint is information that they would have had at the time of the filing of the original Complaint in 2022. (*Id.* at ¶ 95.) The delay in making a factual allegation in an amended pleading is "undue" if it is a fact that was in the possession of the pleader at the time of the original pleading. *AmerisourceBergen,* 465 F.3d at 953. This is not a situation in which Plaintiffs "uncovered" new information via disclosure; it is an undue 2-year delay, for which the provide no justification. This Court should therefore disallow the amendment.

Amendment would also prejudice the Defendants. Prejudice to the opposing party is the "touchstone of the inquiry under rule 15(a)." *Wizards of the Coast LLC,* 309 F.R.D. at 649 (quoting *Eminence Capitol, LLC v. Aspeon, Inc.,* 316 F.3d 1048, 1052 (9th Cir. 2003)). Here, Plaintiffs have failed to disclose their alleged damages or provide evidentiary material to support the nature and extent of their injuries. Defendants requested that Plaintiffs respond to discovery requests regarding their alleged damages (Doc. 95), to which Plaintiffs merely referenced their prior disclosure of pictures of the child. At Plaintiff Paul Kitaj's deposition on January 17, 2025 (Doc. 102), Defendants attempted to obtain information about his work in the security defense industry. Plaintiff's counsel instructed Paul Kitaj not to answer, stated that we were not going to get into anything regarding his work, and claimed that it was privileged information. (1/17/2025 Tr. of Paul Kitaj at 10-11.) Now, Plaintiffs seek to conclusory allege in their

proposed Third Amended Complaint that they were frightened that the Defendants' allegations would threaten their professional standing and Paul Kitaj's employment in the national security defense industry. (Doc. 118 at 10; Doc. 118-2, ¶ 86.) With these new allegations, Plaintiffs would need to supplement their disclosures and discovery responses. And Defendants would need to reopen Paul Kitaj's deposition to inquire about these newly alleged damages to his livelihood, standing, and employment. Such will cause additional delay and expense to the Defendants that could have been avoided had Plaintiffs timely and properly alleged damages. Because amendment at this later hour would be prejudicial for the Defendants, the Court should deny their Motion to Amend.

Moreover, Plaintiffs are not amending the Second Amended Complaint to cure any deficiencies—because this Court has already found that they have sufficiently stated a claim for retaliation. (Doc. 73.) The new factual allegations fail to support Plaintiffs' claim for retaliation from the February 2021 removal. (Doc. 118-2.) Plaintiffs, again, focus on the child's removal from their home rather than on their retaliation claim. (*See* Doc. 118-2, ¶¶ 30, 31, 34, 36, 53-55, 62-64, 94.) For example, they add new allegations about the Temporary Custody Notice at the time of the second removal on February 25, 2021, which was given to Amanda, not the Plaintiffs. (Doc. 118-2, ¶¶ 62-68.) But this Court has already determined that Plaintiffs lack standing to raise these claims because they do not have a cognizable liberty interest in their relationship with R.K. (Doc. 73 at 10; *id.* at 15 ["[A] person would not be chilled by being denied visitation with a child to whom they have no legal or biological relationship."].) Plaintiffs allege that Van Handel made a call to the Hotline, but the Hotline specialist determined that the allegations did not support a report of abuse and neglect and did not assign it for investigation. (Doc. 118-2, ¶¶ 54-55.) Plaintiffs apparently concede that without an investigation as a result of Van Handel's call to the Hotline, there was no retaliation. A claim based on different rights and established by different transactional facts will be a different cause of action,

even if the remedy sought is substantially similar to the prior, unsuccessful cause of action. *Aul v. Allstate Life Ins. Co.*, 993 F.2d 881, 884 (9th Cir. 1993). Plaintiffs' new allegations are thus futile.

But even if the proposed amendments were not futile, they would be pointless. This Court has already determined that Plaintiffs stated a claim for retaliation against the Defendants based on the allegations of the Second Amended Complaint. What point is there in dumping more factual allegations then? None, in fact, because "the grant of leave to amend is not an invitation for Plaintiff to include more redundant and unnecessary facts." *Powell*, 2016 WL 1718189, at *23. And where a plaintiff has already stated a claim "in the operative complaint and will have the opportunity to submit any additional documents that tend to support" it later, justice does not require allowing amendment to allege additional but unnecessary facts. *Crossley v. Niazi*, 212CV2180, 2013 WL 12432703, at *1 (E.D. Cal. Aug. 23, 2013). Plaintiffs' motion to file a Third Amended Complaint to provide "additional information" should therefore be denied.

This litigation commenced in 2022, over two years ago. (Doc. 1.) As explained above, the Plaintiffs already had in their possession the emails and texts that they had initiated and received in relation to their protected speech and the alleged retaliatory actions. Plaintiffs have previously amended their complaint twice. They filed a First Amended Complaint (Doc. 13) and a Second Amended Complaint (Doc. 47) after the Court ruled on two Motions to Dismiss filed by the Defendants (Doc. 44; Doc. 73). Because Plaintiffs have already amended their complaint twice, when they have had full access to their own factual information to support their own allegations for over three years, this Court should disallow further amendment. *Allen*, 911 F.2d at 373. Moreover, Plaintiffs have failed to satisfactorily explain why they failed to develop their contentions originally. As such, a district court does not abuse its discretion in denying a motion to amend. *Id.* at 374. It would be unduly prejudicial for the Defendants to litigate

9

allegations that are merely redundant or futile or could have been raised *years* ago.

### IV. Conclusion.

Plaintiffs have failed to show that justice requires that they be allowed to file another complaint. Their proposed amendments are futile and pointless because they are precluded and redundant. Because futile amendments made in bad faith, which could have been brought at the time of the original pleading should not be permitted. Defendants respectfully request that the Court deny Plaintiffs' Motion for Leave to File a Third Amended Complaint.

RESPECTFULLY SUBMITTED this 3rd day of February, 2025.

**ARIZONA ATTORNEY GENERAL'S OFFICE**

/s/ Claudia Acosta Collings
CLAUDIA ACOSTA COLLINGS
Assistant Attorney General
Attorneys for State Defendants

CERTIFICATE OF SERVICE

I hereby certify that on 3rd day of February, 2025, I caused the foregoing document to be electronically transmitted to the Clerk's Office using the CM/ECF System for Filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Michael Garth Moore
6336 North Oracle Road Suite 326, No. 119
Tucson, AZ 85704
mike@mgmoorelaw.com
*Attorney for Plaintiffs*

/s/ cac