**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Paul Kitaj, et al., | No. CV-22-00463-TUC-JCH |
| Plaintiffs, | **ORDER** |
| v. | |
| Tammy Van Handel, et al., | |
| Defendants. | |

On March 6, 2025, the Court held a hearing with the parties to address heavily redacted DCS records Defendants produced to Plaintiffs. *See* Doc. 135 at 48–74. On March 13, 2025, Defendants[1] submitted to the Court 1005 pages of the disclosed records, unredacted for *in camera* inspection. *See* Doc. 159. Defendants also provided an *ex parte* Memorandum explaining Defendants' redactions to "personal and confidential DCS information" as being made in good faith "according to DCS's statutorily mandated duties and statutory definitions." Defendants later worked with Plaintiffs to narrow the list of documents needing *in camera* inspection. But Defendants argue the remaining approximately 400 pages of documents should not be produced based on various privilege, scope, and relevancy issues. The following ruling addresses those documents'

---

[1] Although Plaintiffs sent the subpoena duces tecum to nonparty DCS, who then moved to quash it (*see* Doc. 101), Defendants and DCS are represented by the same counsel. These parties are technically distinct, but for purposes of this discovery issue, there is little practical distinction. DCS employed Defendants and is custodian of the records at issue. Defendants argued the Motion to Quash on behalf of DCS at oral argument. For clarity, the Court addresses this Order to Defendants, but the Order equally applies to DCS as needed to facilitate disclosure.

discoverability.

## I. Background

Plaintiffs' Third Amended Complaint references three DCS investigations from 2019, 2020, and 2021 involving R.K. (the child of Plaintiffs' son's then-partner, Amanda). *See generally* Doc. 128. At the time of the investigations, R.K., Amanda, and Plaintiffs' son Matthew lived with Plaintiffs and Plaintiffs believed R.K. was their biological grandchild. DCS ultimately substantiated an allegation of neglect against Plaintiff Valorie Kitaj after the 2021 investigation.

Plaintiffs allege one count of First Amendment retaliation. Plaintiffs served a subpoena duces tecum on nonparty DCS.[2] Defendants moved to quash the subpoena, arguing the requested records are irrelevant or protected/confidential under A.R.S. § 41-1959(A) and that production is unduly burdensome. *See* Doc. 101. The Court denied the Motion to Quash (Doc. 127) but agreed to conduct an in-camera review of the records (*see* Doc. 159).

## II. Discovery Standard

In a § 1983 action, the state's interest is that of a litigant, not a sovereign. *Kerr v. U. S. Dist. Ct. for N. Dist. of Cal.*, 511 F.2d 192, 197 (9th Cir. 1975), *aff'd*, 426 U.S. 394 (1976) (holding that when the state is a litigant in a federal civil rights action, state laws restricting access to information do not apply). "State privilege doctrine, whether derived from statutes or court decisions, is not binding on federal courts in these kinds of cases." *Kelly v. City of San Jose*, 114 F.R.D. 653, 654–55 (N.D. Cal. Feb. 26, 1987) (citing *Breed v. U.S. Dist. Ct. for N. Dist. of Cal.*, 542 F.2d 1114, 1115 (9th Cir. 1976)); *see also Pearson v. Miller*, 211 F.3d 57, 61 (3d Cir. 2000) (state confidentiality provisions do not bind federal district courts, but district courts can protect confidentially by imposing

---

[2] Specifically, the subpoena requests "All documents, ESI, audio/video records, created and received in investigation of Case CS00187575 specifically (a) all files in CHILDS/GUARDIAN, all hard copy materials that relate in any way to investigation of Plaintiffs, including the investigation conducted by DCS investigator Yaya Perez in September, 2019; (b) removals of the child from Plaintiffs' home on October 5, 2020 and February 25, 2021; (c) communications with or about and investigation of Jo Ann Hall or anyone associated with her; [and] (d) substantiation of allegations against either or both Plaintiffs." Doc. 101-1 at 5.

reasonable discovery restrictions). While state law may provide guidance, "[t]he scope of an evidentiary privilege in a 42 U.S.C. § 1983 civil rights action is a question of federal law." *Breed*, 542 F.2d at 1115 (citing *Kerr*, 511 F.2d at 197).

In § 1983 actions, federal policy favors broad discovery. 6 James Wm. Moore et al., *Moore's Federal Practice* § 26.46 (3d ed. 2023). District courts have broad discretion when resolving discovery disputes. *See Hallett v. Morgan*, 296 F.3d 732, 751 (9th Cir. 2002).

Under Fed. R. Civ. P. 26(b)(1), a party may obtain discovery regarding "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case. . . ." Information need not be admissible to be discoverable. *Id.* At the discovery stage, relevancy is "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter[s] that could bear on, any issue that is or may be in the case." *In re Williams-Sonoma, Inc.*, 947 F.3d 535, 539 (9th Cir. 2020).

### III.     The Confidential DCS Records Are Discoverable.

*The records are relevant.* The Court will construe relevance broadly at this stage and require Defendants to disclose all DCS records that bear on any issue that is or may be in Plaintiffs' case, with only the exceptions noted by the Court. While the Court has discretion to review specific documents for relevance, the Court mainly assesses relevance at the categorical level. *See UAB "Planner5D" v. Meta Platforms, Inc.*, 746 F. Supp. 3d 806, 808 (N.D. Cal. 2024).

Plaintiffs and their home are referenced regularly throughout the DCS records. All notes, observations, and opinions about the Kitajs and their home leading up to the alleged retaliation are directly relevant to Plaintiffs' claim. In addition to the above DCS investigation documents, the records include documents from a 2016 investigation involving R.K.'s half-sibling, A.S. The 2016 records are relevant based on their temporal proximity to the more recent investigations and because Plaintiffs and their home are mentioned throughout. The 2016 investigation included some sensitive and irrelevant information about nonparties to this matter, which the Court will order redacted. There

are also records from earlier DCS investigations in 2001, 2002, and 2006. These investigations are too remote in time and circumstances to be relevant here. Defendant need not produce them. The remaining records shall be produced to Plaintiffs.

*The records are not privileged.* Insofar as Defendants rely on Arizona law to avoid disclosure, their objections are overruled. DCS records are confidential and shielded from public disclosure *in general*. *See* A.R.S. § 8-807. But this confidentiality is not the kind of privilege that can defeat a discovery request. Under 42 U.S.C. § 5106a(b)(2)(B)(viii)(V), confidential records shall be made available to a court "upon a finding that information in the record is necessary for the determination of an issue before the court." The Court finds the DCS records sought here are necessary to adjudicate Plaintiffs' case. Further, under A.R.S. § 36-568.01(A)(3), DCS must release records if ordered by a court. The Protective Order (Doc. 96) authorizes such disclosure and now, this order requires it. The Court finds Plaintiffs' right to the relevant DCS records outweighs the named nonparties' confidentiality interest or the harm that could come from releasing the records. *See* A.R.S. § 8-807(K). Further, the Court will take several actions to mitigate any potential harms to nonparty confidentiality interests.

First, the in-camera review process itself minimizes potential harm. In camera review is an "eminently worthwhile method to insure that the balance between [the defendant's] claims of irrelevance and privilege and [the] plaintiffs' asserted need for the documents is correctly struck." *Kerr*, 426 U.S. at 405. The in-camera review process allows Plaintiffs to receive necessary disclosures while safeguarding nonparty confidentiality interests.

Second, the Court already entered a Protective Order (Doc. 96), which applies to confidential records released in this case and restricts their dissemination. *See Hipschman v. Cnty. of San Diego*, 738 F. Supp. 3d 1332, 1343 (S.D. Cal. 2024) (a protective order can eliminate or dramatically reduce privacy concerns). Defendant does not explain why the existing Protective Order is inadequate to address any confidentiality concerns. The Protective Order specifies that released records are strictly limited for use in this lawsuit

and cannot be used or further disclosed except as authorized. *See* Doc. 96 at 2–4.[3]

Third, the Court will require Defendants to redact some sensitive information about nonparties that is irrelevant but nested within otherwise relevant, discoverable information. Defendants may also maintain redactions of social security numbers. However, Defendants **will not** redact any other sensitive information in the DCS records (including the names of minors) because this is a discovery matter, and the privacy requirements of Federal Rule of Civil Procedure 5.2 apply only to filings. The parties' Stipulation (Doc. 160) otherwise remains in effect and production under this Order does not waive confidentiality or waive either parties' rights to make future redactions or objections.

Fourth, the Court will prevent disclosure of irrelevant records. Defendants produced some records to Plaintiffs that—although wholly redacted—were beyond the scope of Plaintiffs' subpoena. These documents are not discoverable, and the Court will not require Defendants to release them.

*Plaintiffs' request is proportionate to the needs of the case.* This action alleges a constitutional rights violation by government actors, and the effects of any potential relief may well reach beyond the immediate parties. The importance of the subject matter favors liberal disclosure. *See Shoen v. Shoen*, 5 F.3d 1289, 1292 (9th Cir.1993) ("[W]ide access to relevant facts serves the integrity and fairness of the judicial process by promoting the search for truth.").

The Court finds Plaintiffs' request for these records is not unduly burdensome. "The party claiming that a discovery request is unduly burdensome must allege specific facts which indicate the nature and extent of the burden, usually by affidavit or other reliable evidence. *Jackson v. Montgomery Ward & Co.*, 173 F.R.D. 524, 528–29 (D. Nev. June 18, 1997). Defendants fall short of this requirement. Further, the nature of a retaliation claim warrants broad discovery because Defendants' motives are a key issue.

---

[3] The Court also directs the parties to A.R.S. § 8-807(U): "A person who receives DCS information shall maintain the confidentiality of the information and shall not further disclose the information unless the disclosure is authorized by law or a court order."

## IV. ORDER

**IT IS ORDERED directing** Defendants or the Arizona Department of Child Safety to produce to Plaintiffs the following records, unredacted, unless permitted above: AZDCS-Kitaj Bates numbers 231–57; 261–65; 268–75; 280-89; 297–389; 391–420; 440–46; 448–95; 499–536; 543–63; 569–83; 616–21; 624–37; 769–93; 837–38; 847–48; 850–56; 894–904; 998–1010; 1071–72.

**IT IS FURTHER ORDERED directing** Defendants or the Department of Child Safety to produce to Plaintiffs the following records after completing the specified redactions to protect sensitive and irrelevant nonparty information:

- AZDCS-Kitaj 390, 447, and 849, after redacting the paragraph titled "childhood" in each document; and
- AZDCS-Kitaj 496–98, after redacting the portion starting with the "collateral contacts" section on page 496 up until "safety decision" on page 498.

**IT IS FURTHER ORDERED** that Defendants and the Department of Child Safety shall not produce the following records because they are irrelevant and/or contain sensitive nonparty information: AZDCS-Kitaj 258–60; 266–67; 276–80; 290–96.

Dated this 3rd day of September, 2025.

John C. Hinderaker
United States District Judge